946 P.2d 1317

Charles A. EASTMAN, Personal Representative of the Estate of Lesta B. Eastman, Deceased, Charles A. Eastman and Terry B. Eastman, Plaintiffs–Appellees/Cross–Appellants,

v.

Dale W. McGOWAN, Forest F. Cutright and Joe B. Fields, Defendants/Third–Party Plaintiffs–Appellants/Cross–Appellees,

and

John DOES 1 Thru 10, Jane Does 1 Thru 10, Doe Partnerships 1 Thru 10, Doe Corporations 1 Thru 10, and Doe Governmental Entities 1 Thru 10, Defendants,

v.

Charles A. EASTMAN, Successor Personal Representative of the Estate of Samuel V. Eastman, Deceased, Third–Party Defendant–Appellee/Cross–Appellant.

Nos. 18398, 18435.[1]

Supreme Court of Hawai'i.

Sept. 29, 1997.

1. This opinion addresses two appeals, *Eastman v. McGowan,* Supreme Court No. 18398, and *Eastman v. Cutright,* Supreme Court No. 18435. The two matters were not consolidated on appeal, but the events giving rise to the claims for relief and the issues argued are the same; therefore both appeals are addressed together in this opinion. *Birmingham v. Fodor's Travel Publications, Inc.,* 73 Haw. 359, 365 n. 2, 833 P.2d 70, 74 n. 2 (1992).

Everett Walton, Paul R. Dolan, on the briefs, Lahaina, for defendants/third-party plaintiffs-appellants/cross-appellees Dale W. McGowan and Joe B. Fields.

Gary Robert, and Richard A. Priest, on the briefs, Lahaina, for defendant/third-party plaintiff-appellant/cross-appellee Forest F. Cutright.

Edward F. Mason, on the briefs, Wailuku, for plaintiffs-appellees/cross-appellants.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendants/Third–Party Plaintiffs/Appellants Dale McGowan and Joe Fields,[2] in Supreme Court No. 18398, appeal from: (1) the trial court's order granting Third–Party Defendant/Appellee Lesta Eastman's[3] (Lesta Eastman, as Personal Representative) motion for judgment on the pleadings, filed September 19, 1991 (Motion for Judgment on the Pleadings); (2) the trial court's order granting Plaintiffs–Appellees Lesta Eastman,[4] Charles Eastman, and Terry Eastman's (collectively, the Eastmans) motion and amended motion for summary judgment, filed October 1, 1993 (the Eastmans' Motion for Summary Judgment); and (3) the judgment entered on August 23, 1994, which awarded the Eastmans $80,000.00, plus prejudgment interest and attorneys' fees.

On appeal, McGowan and Fields argue that: (1) the trial court erred when it granted the Motion for Judgment on the Pleadings because Lesta Eastman, as Personal Representative, did not show that she was entitled to judgment as a matter of law; (2) the trial court erred when it granted the Eastmans' Motion for Summary Judgment because the intent of the parties in two settlement agreements needed to be discerned, and this presented a genuine issue of material fact; and (3) the judgment should not have included the amounts for prejudgment interest, certain court costs and expenses, and attorneys' fees.

Lesta Eastman, as Personal Representative, and the Eastmans, in Supreme Court No. 18398, cross-appeal from: (1) the trial court's order vacating dismissal of the counterclaim and third-party complaint, filed August 23, 1993 (Motion to Vacate Dismissal); and (2) the trial court's order denying the motion to dismiss for failure to join persons needed for just adjudication, filed October 1, 1993 (Motion to Dismiss for Failure to Join).

On cross-appeal, Lesta Eastman, as Personal Representative, and the Eastmans argue that: (1) the trial court erred in granting the Motion to Vacate Dismissal because the Defendants' attorney did not provide a satisfactory reason for failing to file pretrial statements for the complaint, the counterclaim, or the third-party complaint; (2) the trial court's reinstatement of the counterclaim and the third-party complaint was ineffective because Defendants did not comply with the requirements for reinstatement as set forth in the order granting the Motion to Vacate Dismissal; and (3) the trial court erred in denying the Motion to Dismiss for Failure to Join because certain parties who would be adversely affected by a judgment in this case were not joined.

Defendant/Third-Party Plaintiff/Appellant Forest Cutright, in Supreme Court No. 18435, appeals from: (1) the trial court's order granting the Motion for Judgment on the Pleadings; (2) the trial court's order granting the Eastmans' Motion for Summary Judgment; and (3) the judgment entered on August 23, 1994, which awarded the Eastmans $80,000.00, plus prejudgment interest and attorneys' fees.

On appeal, Cutright argues that: (1) the trial court erred when it granted the Motion for Judgment on the Pleadings because Lesta Eastman, as Personal Representative, did not show that she was entitled to judgment as a matter of law; (2) the trial court erred when it granted the Eastmans' Motion for Summary Judgment because the intent of the parties in two settlement agreements needed to be discerned, and this presented a genuine issue of material fact; and (3) the

---

2. McGowan, Fields, and Defendant/Third–Party Plaintiff/Appellant Forest Cutright will be collectively referred to as "Defendants" in this opinion.

3. Third–Party Defendant–Appellee Lesta Eastman, Personal Representative of the Estate of Samuel Eastman (Lesta Eastman, as Personal Representative), died during the pendency of this action. Charles Eastman, her son, as Successor Personal Representative of the Estate of Samuel Eastman, was then substituted as Third–Party Defendant–Appellee.

4. Plaintiff–Appellee Lesta Eastman, individually (Lesta Eastman), was also sued by Defendants. Her claims as an individual will be addressed with Charles and Terry Eastman's claims (as the Eastmans). After her death, Charles Eastman, as Personal Representative of the Estate of Lesta Eastman, was then substituted for her as Plaintiff–Appellee.

judgment should not have included the amounts for prejudgment interest, certain court costs and expenses, and attorneys' fees.

We affirm the trial court's decisions and hold that: (1) Defendants' counterclaim was barred by the statute of limitations, and the trial court properly granted the Motion for Judgment on the Pleadings; (2) the two settlement agreements were unambiguous; therefore, the parties' intent did not need to be discerned, there were no issues of material fact, and the trial court properly granted the Eastmans' Motion for Summary Judgment; (3) the judgment was not erroneous in awarding prejudgment interest and attorneys' fees to the Eastmans; and (4) Lesta Eastman, as Personal Representative, and the Eastmans' cross-appeal was untimely, and the issues raised in the cross-appeal do not need to be addressed in this opinion.

## I.  BACKGROUND

### A.  LAWSUITS AROSE OUT OF CONSTRUCTION PARTNERSHIPS

Defendants and Samuel Eastman formed two partnerships to develop a fourteen unit condominium project in Napili, Maui, Hawai'i (Napili Project). One of the partnerships included David A. Fleming, and the other partnership included three investors from Washington (the Washington Investors).

Samuel Eastman allegedly made fraudulent misrepresentations to Fleming about his investment. Fleming sued Defendants and Samuel Eastman in *David A. Fleming v. Dale McGowan, et al.,* Civil No. 5461, in the Second Circuit Court, State of Hawai'i.

Samuel Eastman also allegedly made fraudulent misrepresentations to the Washington Investors about their investment. The Washington Investors brought suit against Defendants and Samuel Eastman in *John M. Bussanich, et al. v. Samuel V. Eastman, et al.,* No. C84–469T, in the United States District Court for the Western District of Washington.

Samuel Eastman died on November 23, 1984, while both cases were pending, and shortly thereafter Defendants settled the cases with Fleming and the Washington Investors.

### B.  SETTLEMENT BETWEEN THE EASTMANS AND DEFENDANTS

In order to settle all legal claims between Samuel Eastman's estate and Defendants, the parties entered into a settlement agreement on March 7, 1985 (March 1985 Agreement).

The March 1985 Agreement established certain terms and conditions under which the Eastmans agreed to purchase two condominium units in the Napili Project. Specifically:

1.  The agreed upon price for each of the condominium units was $200,000.00, for a total purchase price of $400,000.00.

2.  Lesta Eastman, as Personal Representative, agreed to pay $80,000.00 to Defendants on the execution of the March 1985 Agreement. The sum was intended as a down payment against the total purchase price.

3.  As soon as Defendants completed construction of the Napili Project and complied with all applicable provisions of Hawaii's condominium law, Lesta Eastman, as Personal Representative, and the Eastmans were required to sign a binding contract to purchase the two units for a purchase price of $320,000.00 ($400,000.00 less the $80,000.00 down payment).

4.  Lesta Eastman, as Personal Representative, and the Eastmans were also required to

apply for conventional first mortgage financing, *if necessary to complete said purchase,* and ... provide *to the lender* all required information and documentation in a timely manner so that *they* can qualify for said financing.

(Emphasis added.)

5.  If a Certificate of Occupancy was not issued by the County of Maui for the Napili Project within two years from the execution of the March 1985 Agreement, Defendants were to return the $80,000.00 to Lesta Eastman, as Personal Representative. Lesta Eastman, as Personal Representative, and the Eastmans would have no further obligations under the March 1985 Agreement.

The March 1985 Agreement was executed on March 7, 1985. Lesta Eastman, as Personal Representative, paid the $80,000.00 required by the March 1985 Agreement to Defendants on April 2, 1985. Thereafter, Lesta Eastman, as Personal Representative, and the Eastmans were prepared to comply with their remaining duties under the March 1985 Agreement.

## C. DEFENDANTS BREACHED MARCH 1985 AGREEMENT

Nineteen months later, on December 16, 1986, the Eastmans received a letter from Defendants' attorney containing various documents and a request that the Eastmans "submit financial statements to demonstrate their financial capability to purchase the units." Among the enclosed documents was a "Condominium Public Report," which gave an estimated completion date of the Napili Project of September 1, 1987, a date six months past the day on which Defendants were required to obtain a Certificate of Occupancy or return the $80,000.00.

The Eastmans investigated the matter further and discovered that Defendants had not begun construction on the Napili Project. The Eastmans were unable to determine whether Defendants had secured any commitment from a lender.

It is undisputed that Defendants could not have obtained financing, completed construction of the Napili Project, and obtained a Certificate of Occupancy in the three months between their attorney's December 16, 1986 letter and the March 7, 1987 deadline. Defendants admitted this impossibility in a response to the Eastmans' requests for admissions.

The Eastmans decided not to continue with a purchase of the two condominium units because the Certificate of Occupancy would not be issued by March 7, 1987 and because there was no evidence that Defendants had obtained financing for the Napili Project. By letter dated May 4, 1987, the Eastmans' attorney informed Defendants' attorney of this decision and demanded the return of the $80,000.00.

The Defendants' attorney responded by letter dated May 8, 1987, contending that the March 1985 Agreement required the Eastmans to provide information to Defendants' lender and that the Napili project was now stalled because the Eastmans had not provided their financial information and had not executed the purchase agreements included with the December 16, 1986 letter.

The Eastmans filed a complaint on March 6, 1991, alleging breach of contract on the part of the Defendants. Before filing the complaint, Lesta Eastman, as Personal Representative, assigned her claim against Defendants to herself individually.

## D. THE WASHINGTON INVESTORS AGREEMENT

In response to the Eastmans' complaint, Defendants filed a counterclaim and a third-party complaint, the latter naming Lesta Eastman, as Personal Representative, as third-party defendant. Count I of the counterclaim alleged breach of the March 1985 Agreement. Count II of the counterclaim and count I of the third-party complaint alleged the breach of a contract dated a month prior to the March 1985 Agreement. This contract will be referred to as the "Washington Investors Agreement." Count II of the third-party complaint alleged fraudulent misrepresentations on the part of Samuel Eastman.

On February 20, 1985, Lesta Eastman, as Personal Representative, and the Eastmans signed a release agreement with Washington Investors whereby the Washington Investors dismissed certain claims against the Eastmans, specifically, their federal action. In return, Lesta Eastman, as Personal Representative, and the Eastmans agreed to purchase two condominium units in the Napili Project for $200,000.00 each "by making a FORTY THOUSAND DOLLAR (40,000.00) initial payment on each of said two condominium units *at commencement of their construction* for the total price of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) each." (Emphasis added.)

### E. *THE SUMMARY JUDGMENTS*

In its order filed September 19, 1991,[5] the trial court granted Lesta Eastman as Personal Representative's Motion for Judgment on the Pleadings as to count II of the third-party complaint, treating the motion as a summary judgment motion pursuant to Hawai'i Rules of Civil Procedure (HRCP) 12(c).

On October 1, 1993, the trial court granted the Eastmans' Motion for Summary Judgment. This motion requested summary judgment on the complaint, the counterclaim, and count I of the third-party complaint.

On August 23, 1994, after a hearing for damages, final judgment was entered. The judgment included $80,000.00 in principal, prejudgment interest, and attorneys' fees.

McGowan and Fields, in Supreme Court No. 18398, timely appealed from the following: (1) the order granting the Motion for Judgment on the Pleadings; (2) the order granting the Eastmans' Motion for Summary Judgment; and (3) the judgment, which awarded the Eastmans $80,000.00 plus prejudgment interest and attorneys' fees.

Cutright, in Supreme Court No. 18435, timely appealed from the following: (1) the order granting the Motion for Judgment on the Pleadings; (2) the order granting the Eastmans' Motion for Summary Judgment; and (3) the judgment, which awarded the Eastmans $80,000.00, plus prejudgment interest and attorneys' fees.

Lesta Eastman, as Personal Representative, and the Eastmans, filed a cross-appeal on September 30, 1994 from: (1) the order denying the Motion to Vacate Dismissal; and (2) the order denying the Motion to Dismiss for Failure to Join. Under Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(3), a timely cross-appeal must be filed within fourteen days after notice of the filing of the notice of appeal was served on the party. Here, Lesta Eastman, as Personal Representative, and the Eastmans were served with notice of No. 18398 on September 14, 1994.

Lesta Eastman, as Personal Representative, and the Eastmans filed their cross-appeal sixteen days after receiving notice of the notice of appeal, making their cross-appeal untimely. Therefore, we do not address the issues raised in the cross-appeal due to lack of jurisdiction.[6]

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

■ The order granting Lesta Eastman, as Personal Representative's Motion for Judgment on the Pleadings was treated as a motion for summary judgment. If, on a motion for judgment on the pleadings, the trial court considers matters outside of the pleadings and the court does not exclude the matters, it may treat the motion as one for summary judgment and dispose of it as provided in Hawai'i Rules of Civil Procedure 56. *State ex rel. Bronster v. United States Steel Corp.*, 82 Hawai'i 32, 38–39, 919 P.2d 294, 300–1 (1996); HRCP Rule 12(c) (1972).

When reviewing the trial court's orders granting summary judgment, we review under the rule reiterated in *Iddings v. Mee–Lee*, 82 Hawai'i 1, 919 P.2d 263 (1996):

> On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Heatherly v. Hilton Hawaiian Village Joint Venture*, 78 Hawai'i 351, 353, 893 P.2d 779, 781 (1995).

*Id.* at 5, 919 P.2d at 267; HRCP 56(c) (1990).

■ Prejudgment interest, where appropriate, is awardable under Hawai'i Re-

---

5. This order erroneously granted summary judgment in favor of the Eastmans collectively, rather than Lesta Eastman, as Personal Representative, and was corrected by a subsequent order filed on December 7, 1993.

6. Alternatively, because we affirm the circuit court's orders granting the Motion for Judgment on the Pleadings and the Eastmans' Motion for ·Summary Judgment, the issues raised in the cross-appeal do not need to be addressed.

vised Statutes (HRS) § 636–16 (1993) in the discretion of the court and is reviewed under the abuse of discretion standard. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.,* 74 Haw. 85, 136–37, 839 P.2d 10, 36, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992); *Schmidt v. The Board of Directors of the Association of Apartment Owners of the Marco Polo Apartments,* 73 Haw. 526, 533–34, 836 P.2d 479, 483 (1992).

■ Generally, taxation of costs is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Bjornen v. State Farm Fire and Cas. Co.,* 81 Hawai'i 105, 107, 912 P.2d 602, 604 (App. 1996); *Mist v. Westin Hotels, Inc.,* 69 Haw. 192, 200–1, 738 P.2d 85, 92 (1987).

■ This court "review[s] the circuit court's denial and granting of attorney's fees under the abuse of discretion standard." *Weinberg v. Mauch,* 78 Hawai'i 40, 52–53, 890 P.2d 277, 289–90 (citation, internal quotation marks, and original brackets omitted), *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995).

### B. *THE TRIAL COURT DID NOT ERR IN DISMISSING THE FRAUDULENT MISREPRESENTATION CHARGE BECAUSE THE APPLICABLE STATUTE OF LIMITATIONS HAD EXPIRED*

■ In Count II of the third-party complaint, Defendants alleged that Samuel Eastman "intentionally and negligently made fraudulent misrepresentations and engaged in other misconduct."

■ HRS § 657–1(4) (1993) establishes the statute of limitations for the fraudulent misrepresentation claim made by Defendants in count II of the third-party complaint. HRS § 657–1(4) provides:

§ **657–1 Six years.** The following actions shall be commenced within six years next after the cause of action accrued, and not after:

(4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.

Fraudulent misrepresentation is not governed by a specific limitations period, and the general limitations period set forth in HRS § 657–1(4) applies. *Au v. Au,* 63 Haw. 210, 217, 626 P.2d 173, 179 (1981).

The six year statute of limitations expired because Defendants filed the third-party complaint on April 8, 1991, roughly six years and four months after Samuel Eastman died. At a minimum, any fraudulent representation made by Samuel Eastman must have occurred before his death. Therefore, count II was barred by the statute of limitations, and summary judgment on this issue was properly granted by the trial court.

### C. *THE TRIAL COURT DID NOT ERR IN GRANTING THE EASTMANS' MOTION FOR SUMMARY JUDGMENT BECAUSE THERE WERE NO ISSUES OF MATERIAL FACT AS TO THE INTENT OF THE PARTIES*

We reject Defendants' argument that the trial court erred when it granted the Eastmans' Motion for Summary Judgment. Specifically, the order granting the Eastmans' Motion for Summary Judgment disposed of the following issues: (1) whether the Eastmans breached the March 1985 Agreement; and (2) whether the Eastmans breached the Washington Investors Agreement.

### 1. *THE MARCH 1985 AGREEMENT*

■ Defendants contend that summary judgment was inappropriate because the intention of the parties in the March 1985 Agreement was in dispute, and this presented a genuine issue of material fact. We disagree.

The March 1985 Agreement was unambiguous in its terms and clearly established the intent of the parties. Lesta Eastman, as Personal Representative, was to pay Defendants $80,000.00. The Eastmans were to execute written purchase contracts for two condominium units in the Napili Project, apply for financing "if necessary to complete said purchase," and provide all required information to their prospective lender. Defendants were required to complete the Napili Project and obtain a Certificate of Oc-

cupancy by March 7, 1987. If Defendants failed to complete the Napili Project and obtain a Certificate of Occupancy by that date, they were required to return the $80,-000.00 to Lesta Eastman, as Personal Representative, and the Eastmans would have no further obligations under the March 1985 Agreement.

Defendants made no demands upon the Eastmans to do anything until their attorney's December 16, 1986 letter, requesting that the Eastmans execute the condominium sales contracts. On the date of that demand, Defendants had not started construction on the Napili Project, and it was impossible for Defendants to complete construction on the Napili Project and to obtain a Certificate of Occupancy by March 7, 1987.

### 2. THE WASHINGTON INVESTORS AGREEMENT

■ Defendants contend that summary judgment was inappropriate because the intention of the parties in the Washington Investors Agreement was in dispute, and this presented a genuine issue of material fact. We disagree.

Defendants argue that the parties' intent in creating the Washington Investors Agreement needed to be examined because, although not specifically mentioned in the Washington Investors Agreement, it was intended that the Defendants were to be third-party beneficiaries[7] of the Washington Investors Agreement.

The Washington Investors Agreement provided that the Eastmans would buy two condominium units once construction started at the Napili Project, pay $80,000.00 down, then sell the units and pay $50,000.00 to the Washington Investors from the proceeds of the sale.

On the face of the agreement, Defendants were not intended third-party beneficiaries of the Washington Investors Agreement, but rather, incidental beneficiaries.[8] Although the Washington Investors Agreement could not be executed without the participation of Defendants, the purpose behind the Washington Investors Agreement was the discharge by the Washington Investors of all claims against the Eastmans in return for $50,000.00. It was only incidental that Defendants were involved, and a breach of the Washington Investors Agreement would not give rise to a claim by Defendants against the Eastmans for a breach of contract.

### D. THE TRIAL COURT DID NOT ERR IN AWARDING PRE-JUDGMENT INTEREST TO THE EASTMANS

■ "Prejudgment interest, where appropriate, is awardable under HRS § 636-16 in the discretion of the trial court." Amfac, 74 Haw. at 136, 839 P.2d at 36; Schmidt, 73 Haw. at 533, 836 P.2d at 483. HRS § 636-16 provides:

§ 636-16 Awarding interest. In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.

HRS § 478-2(1) (1993) provides for a rate of ten percent interest per year "for money due on any bond, bill, promissory note, or other instrument of writing, or for money lent, after it becomes due."

In this case, the trial court awarded the Eastmans interest of $52,688.00, computed at

---

7. A third-party beneficiary is defined in 4 A. Corbin, Corbin on Contracts § 774 (1951) as follows: "[i]n the United States there are various persons who are recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration. They are called herein 'third party beneficiaries.'" Id. at 6.

8. An incidental beneficiary is defined in 4 Corbin, Corbin on Contracts § 779C (1951) as "a person who will be benefited by the performance of a contract in which he is not a promisee, but whose relation to the contracting parties is such that the courts will not recognize any legal right in him." Id. at 40 (footnote omitted). Additionally, Restatement (Second) of Contracts § 315 (1981) states that "[a]n incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee." Id. at 477.

the rate of 10 percent per annum on the $80,000.00 from March 7, 1987 to October 7, 1993. The $80,000.00 was due from an instrument of writing, the March 1985 Agreement. The date the interest was computed from was the date of the breach of the March 1985 Agreement, March 7, 1987. This was the date by which the Certificate of Occupancy was to have been issued. The award of prejudgment interest was appropriate.[9]

### E. THE TRIAL COURT DID NOT ERR IN AWARDING COSTS AND EXPENSES TO THE EASTMANS

▆▆▆ HRS § 607-9 (1993) governs the taxation of costs and provides:

§ 607-9 **Cost charges exclusive; disbursements.** No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

All actual disbursements, *including but not limited to*, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

(Emphasis added.)

An examination of the costs incurred by the Eastmans reveals that they consisted of court costs, telephone charges, copying charges, court reporter services, sheriff's services, and travel expenses for the deposition of Lesta Eastman, who, due to poor health, was unable to travel to Hawai'i. These costs were reasonably incurred, and Defendants have not shown that the trial court abused its discretion in awarding them.

The judgment in this case did not include the costs of $1,943.67 awarded in the trial court's order entered on December 7, 1993. The Eastmans are free to file a motion for costs with the trial court to rectify this oversight.

### F. THE TRIAL COURT DID NOT ERR IN AWARDING ATTORNEYS' FEES TO THE EASTMANS

The applicable statute governing attorneys' fees is HRS § 607-14 (Supp.1996). HRS § 607-14 provides in relevant part:

§ 607-14 **Attorneys' fees in actions in the nature of assumpsit, etc.** *In all the courts, in all actions in the nature of assumpsit* and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, *there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable;* provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or if the fee is not based on an hourly rate, the amount of the agreed upon fee.

The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

(Emphasis added).

1. *ACTIONS IN THE NATURE OF ASSUMPSIT ARE SEPARATE AND DISTINCT FROM ACTIONS ON CONTRACTS IN WRITING THAT PROVIDE FOR ATTORNEYS' FEES*

▆▆▆ When interpreting a statute, we must read the language of a statute in the context of the entire statute and in a manner consistent with its purpose. *State v. Mezurashi*, 77 Hawai'i 94, 97, 881 P.2d 1240, 1243

---

9. Defendants argue that the Eastmans created a delay in entering judgment, and, therefore, prejudgment interest should not have been awarded. It should be noted that prejudgment interest was awarded through October 7, 1993, roughly the date of the order granting the Eastmans' Motion for Summary Judgment, so any delay in entering the judgment had no impact on prejudgment interest. The final judgment in this case was issued on August 23, 1994.

(1994). Prior to 1993, attorneys' fees were governed by two separate statutes. HRS § 607–14 (1985) dealt with attorneys' fees in all actions in the nature of assumpsit,[10] while HRS § 607–17 (1985) dealt with attorneys' fees in an action on a promissory note or other contract in writing which provided for an attorney's fee.[11]

In 1993, the Hawaiʻi legislature passed Act 200, which combined the two statutes governing attorneys' fees into one statute, HRS § 607–14 (1993). The legislative history stated:

> Your Committee also finds that § 607–17, [Hawaiʻi] Revised Statutes should be eliminated, and its provisions incorporated within § 607–14. In doing so, it is not your Committee's intention to expand the category of cases in which attorneys [sic] fees are awarded, but instead to bring uniformity to the procedure for taxing attorneys [sic] fees in the type of cases described in this measure.

Hse. Conf. Comm. Rep. No. 127, in 1993 House Journal, at 932. Act 200 amended HRS § 607–14 (1993) to allow for attorneys' fees "in all actions on a promissory note or other contract in writing that provides for an attorney's fee." 1993 Haw. Sess. L. Act 200, § 1 at 305. Act 200 also added the following language to HRS § 607–14 (1993) (the Writing Requirement):

> Any law to the contrary notwithstanding, no such attorney's fee shall be allowed to the plaintiff by any court:
>
> (1) If prior to or at the time the debt was incurred, the debtor did not sign an instrument in writing which pro-

vided for the payment of an attorney's fee[.]

*Id.* at 306.

After the passage of Act 200, there was some confusion as to when attorneys' fees could be awarded by the courts. Previously, attorneys' fees could be awarded: (1) in all actions in the nature of assumpsit; (2) all actions on (a) a promissory note; or (b) other contracts in writing providing for an attorneys' fee. However, now that the two statutes were combined in § 607–14 (1993), some courts interpreted the Writing Requirement to require a writing providing for attorneys' fees in actions in the nature of assumpsit.

In response, the Hawaiʻi legislature passed Act 74 in 1994. The legislative history stated:

> Your Committee finds that the amendment to § 607–14, [Hawaiʻi] Revised Statutes (HRS), by Act 200, Session Laws of [Hawaiʻi] 1993, has caused confusion in the courts whether attorneys' fees may be taxed in assumpsit actions. As a result of Act 200, attorneys' fees were not permitted without a written instrument requiring payment of the fees and signed by the debtor.
>
> This bill addresses the confusion by deleting the language on page 2 lines 8–17 and substituting clarifying language on page 2 lines 18–24. *These changes make clear that attorneys' fees may be awarded in assumsit [sic].*

Sen. Stand. Comm. Rep. No. 2745, in 1994 Senate Journal, at 1092 (emphasis added). Additionally, the legislative history stated:

> Your Committee finds that the revisions made to § 607–14, [Hawaiʻi] Revised Stat-

---

10. HRS § 607–14 (1985) provided in pertinent part:

> § 607–14 Attorneys' fees in actions in the nature of assumpsit. *In all the courts, in all actions in the nature of assumpsit* there shall be taxed as attorneys' fees, in addition to the attorneys' fees otherwise taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, a fee which the court determines to be reasonable but which shall not exceed the amount obtainable under the following schedule:
>
> . . . .

(Emphasis added.)

11. HRS § 607–17 (1985) provided in pertinent part:

> § 607–17 Attorney's fees when provided for in promissory notes, etc. Any other law to the contrary notwithstanding, *where an action is instituted in the district or circuit court on a promissory note or other contract in writing which provides for an attorney's fee* the following rates shall prevail and shall be awarded to the successful party, whether plaintiff or defendant:
>
> . . . .

(Emphasis added.)

utes (HRS), by Act 200, Session Laws of [Hawaiʻi] 1993, have led to some confusion about the Legislature's intent. Specifically, the inclusion of language from § 607–17, HRS, relating to the collection of attorneys' fees from prior debts, has led some to conclude that the statute precludes collection in assumpsit cases where *no writing* exists.

*Your Committee finds that interpreting the present statute to the effect that all debts must have a writing before attorneys' fees can be taxed is incorrect and contrary to a careful reading of the statute and the long history of statutory attorneys' fees allowed in assumpsit actions.*

Hse. Stand. Comm. Rep. No. 336–94, in 1994 House Journal, at 986 (emphasis added).

To clear up confusion, Act 74 deleted the Writing Requirement from § 607–14 (1993) and inserted the following language: "Where the note or other contract in writing provides for the recovery of attorneys' fees incurred in connection with a prior debt, those attorneys' fees shall not be allowed in the immediate action unless there was a writing authorizing those attorneys' fees before the prior debt was incurred." 1994 Haw. Sess. L. Act 74, § 1 at 184. This eliminated the interpretation that the Writing Requirement required a writing providing for attorneys' fees in all cases, including actions in the nature of assumpsit, and clarified that the Writing Requirement only applied to contracts in writing that provided for the attorneys' fees.

■ When the Hawaiʻi legislature combined the two attorneys' fees statutes, the intention was to keep separate the three types of cases in which attorneys' fees could be awarded. The legislature did not intend to require a written agreement for attorneys' fees in an action in assumpsit. Therefore, under HRS § 607–14, attorneys' fees may be awarded in three types of cases: (1) all actions in the nature of assumpsit; (2) all actions on a promissory note; and (3) contracts in writing that provides for an attorney's fee.

12. The effective date of Act 74 was June 7, 1994.

2. *AN ACTION ON A CONTRACT IN WRITING THAT DOES NOT PROVIDE · FOR ATTORNEYS' FEES IS AN ACTION IN ASSUMPSIT*

In previous case law, we have defined assumpsit as "a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, *written* or verbal, as well as quasi contractual obligations." *S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club,* 76 Hawaiʻi 396, 399–400, 879 P.2d 501, 504–505 (1994) (*citing Schulz v. Honsador, Inc.,* 67 Haw. 433, 435–36, 690 P.2d 279, 281 (1984)) (citations omitted) (emphasis added).

In *Utsunomiya,* we held that even though there was no clause in the contract allowing for an award of attorneys' fees, attorneys' fees incurred defending an attack on title against a third party was in the nature of assumpsit. We affirmed the award of reasonable attorneys' fees to Moomuku pursuant to HRS § 607–14.

■ The controversy in this case is the $80,000.00 due under the March 1985 Agreement and is an action in the nature of assumpsit. The March 1985 Agreement did not provide for attorneys' fees. Judgment was entered on August 23, 1994, when HRS § 607–14 was in effect.[12] Under HRS § 607–14, an action in the nature of assumpsit does not need a clause in writing providing for attorneys' fees in order for attorneys' fees to be granted.

The trial court computed the attorneys' fees according to HRS § 607–14, and Defendants have not shown that this award of attorneys' fees was an abuse of discretion.

### III. *CONCLUSION*

For the foregoing reasons, we affirm: (1) the trial court's order granting Lesta Eastman, as Personal Representative's Motion for Judgment on the Pleadings; (2) the trial court's order granting the Eastmans' Motion for Summary Judgment; and (3) the judg-

1994 Haw. Sess. L. Act 74, § 4 at 184.

ment entered on August 23, 1994, which found for the Eastmans and awarded them $80,000.00, plus prejudgment interest and attorneys fees.

Additionally, the affirmance of the judgment is without prejudice to allow the East-mans to file a motion for costs with the trial court.