**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000370**
**19-DEC-2025**
**08:54 AM**
**Dkt. 116 MO**

NO. CAAP-23-0000370

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

KALLIE L. CURTIS; DANIEL J. CURTIS;
NUBIA LIZETH CURTIS, Plaintiffs-Appellants,
v.
HAWAIIAN MISSION ACADEMY, domestic non-profit organization;
HAWAII CONFERENCE OF SEVENTH-DAY ADVENTISTS,
domestic non-profit organization;
RALPH S. WATTS, III; ERIK VANDENBURGH; JAY WARREN;
RHONDA ("MIKI") L. NELSON; JEAN-MARCEL CLOUZET; TAMMY CLOUZET;
JOE LEE, Defendants-Appellees,
and
DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10;
ROE "NON-PROFIT" CORPORATIONS 1-10;
DOE UNINCORPORATED ORGANIZATIONS 1-10;
ROE GOVERNMENTAL ENTITIES 1-10, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-22-0000613)

MEMORANDUM OPINION
(By: Hiraoka, Presiding Judge, McCullen and Guidry, JJ.)

Plaintiffs-Appellants **Kallie** L. Curtis, Daniel J.

Curtis (**Kallie's Father**), and Nubia Lizeth Curtis (**Kallie's**

**Mother**) (collectively, **the Curtis Family**) appeal from the

Circuit Court of the First Circuit's May 30, 2023 Final

Judgment.[1]  On appeal, the Curtis Family challenges the circuit court's denial of spoliation sanctions, grant of summary judgment, and award of attorneys' fees.  We affirm.

## I.    BACKGROUND

The underlying facts of this case are largely undisputed.  Jean-Marcel Clouzet (**Mr. Clouzet**) taught Bible Studies at **Hawaiian Mission Academy,** a parochial school affiliated with the Hawai'i Conference of Seventh-Day Adventists (**the Conference**).  In February 2022, Mr. Clouzet invited his wife (**Mrs. Clouzet**) to speak to the Bible Studies class about marriage and relationships.

During the discussion, a student asked a question related to white privilege.  According to Kallie's deposition, Mrs. Clouzet stated she herself benefited from white privilege and pointed Kallie out, saying she had it too.  Kallie identifies as non-white/Hispanic.

The next day, Kallie's Father emailed the principal of Hawaiian Mission Academy, Joe Lee (**Principal Lee**), expressing that he found the incident "to be beyond offensive."  He reminded Principal Lee they were assured "that those type of race views had no place at" Hawaiian Mission Academy.  Kallie's Father stated that "nothing short of [Mr. Clouzet's] near

---

[1]  The Honorable Gary W.B. Chang presided.  We note that Kallie was eighteen years old at the time of the incident.

2

immediate resignation or termination from [Hawaiian Mission Academy] would be a satisfactory resolution."

By February 17, 2022, eight days after the incident, Mr. Clouzet had been fired. His personnel folder, which was allegedly empty, was later destroyed by Principal Lee. The Curtis Family brought a civil action seeking in excess of $5,778,000.00 in damages arising from the incident.

Defendants-Appellees the Conference; Hawaiian Mission Academy; Ralph S. Watts, III, former president of the Conference (**former President Watts**); Erik Vandenburgh, the Conference president that succeeded former President Watts (**President Vandenburgh**); Jay Warren, deputy to the Conference president (**Deputy Warren**); Rhonda "Miki" L. Nelson, the Conference Superintendent of Education (**Superintendent Nelson**); Principal Lee; and Mr. and Mrs. Clouzet (collectively, **Defendants**) moved to dismiss all claims.

The circuit court dismissed Kallie's Mother's and Father's claims against Mr. and Mrs. Clouzet but denied without prejudice dismissal of all other claims against Defendants to allow the Curtis Family to conduct discovery.[2] Following the

---

[2] The Curtis Family did not appeal the dismissal of Kallie's Mother's and Father's claims against Mr. and Mrs. Clouzet, nor did they challenge the circuit court's grant of summary judgment on Counts V (Breach of Contract), VII (Civil Conspiracy), or VIII (Loss of Consortium).

(continued . . . )

close of discovery, Defendants moved seriatim to dismiss each count, which the circuit court granted.  On May 30, 2023, the circuit court entered Final Judgment against the Curtis Family and in favor of Defendants.  The Curtis Family appeals from the Final Judgment.

## II.  DISCUSSION

On appeal, the Curtis Family challenges (1) the denial of spoliation sanctions; (2) the granting of summary judgment as to Counts I (Negligence), II (Negligent Supervision), III (Negligent Infliction of Emotional Distress (**NIED**)), IV (Intentional Infliction of Emotional Distress (**IIED**)), and VI (Defamation); and (3) the award of attorneys' fees.  We affirm.

## A.   No Abuse in Denying Spoliation Sanctions

First, the Curtis Family contends the circuit court "abused its discretion by not sanctioning [Defendants] and/or by not providing a remedy . . . in the form of a spoliation presumption."  (Formatting altered.)  According to the Curtis Family, the circuit court "should have issued a 'spoliation presumption' that [Mr. Clouzet]'s 'empty' personnel file

---

(. . . continued)

The circuit court also dismissed all claims in Count I (Negligence) that were premised on a theory of educational negligence, which is not actionable under Hawaiʻi law.  See Nakamura v. Univ. of Hawaiʻi, 145 Hawaiʻi 295, 451 P.3d 875, No. CAAP-16-0000095, 2019 WL 5849790, at *5 n.5 (App. Nov. 7, 2019) (mem. op.).

contained evidence supportive of each count as they pertain to [Mr. Clouzet] and his legal relationships with every other" Defendant.

We review a circuit court's decision regarding sanctions based on spoliation for an abuse of discretion. Stender v. Vincent, 92 Hawai'i 355, 362, 992 P.2d 50, 57 (2000).

In Richardson v. Sport Shinko (Waikiki Corp.), the Hawai'i Supreme Court explained its rationale for upholding spoliation sanctions in an earlier case, Wong v. City & County of Honolulu, 66 Haw. 389, 665 P.2d 157 (1983):

> [K]ey to our holding in Wong was: (1) the City's culpability in destroying a piece of potentially critical evidence formally requested in discovery; (2) the resulting prejudice to the plaintiffs' case; and (3) the inequity that would occur in allowing the City to accrue a benefit from its conduct.

Richardson, 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994) (emphasis added).

Here, the circuit court concluded that the Curtis Family failed to carry their burden as to all three "elements" under Richardson because nothing in the record suggested that anything other than an empty folder was destroyed. As to the first element, the circuit court concluded that the Curtis Family failed to establish that the folder contained any evidence, let alone "potentially critical evidence."

5

Indeed, the record does not show that "potentially critical evidence" was destroyed. Principal Lee testified that the folder he destroyed was empty. The Curtis Family did not controvert that testimony. As the circuit court described, the Curtis Family "had other discovery opportunities that they refused or failed to pursue," such as deposing other school employees working in the office with access to the records. The circuit court also noted the Curtis Family could have questioned Principal Lee "in greater detail during his deposition" but did not.

Because the Curtis Family failed to prove this first element, the circuit court did not abuse its discretion by denying their requested spoliation relief.

**B.    No Error in Granting Summary Judgment**

Next, the Curtis Family challenges the circuit court's granting of summary judgment on Counts I (Negligence), II (Negligent Supervision), III (NIED), IV (IIED), and VI (Defamation).

We review the grant or denial of summary judgment de novo. Hilo Bay Marina, LLC v. State, 156 Hawaiʻi 478, 486, 575 P.3d 568, 576 (2025).

A defendant movant "may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that

6

the nonmovant will be unable to carry his or her burden of proof at trial." Ralston v. Yim, 129 Hawaiʻi 46, 60, 292 P.3d 1276, 1290 (2013). "Where the movant attempts to meet his or her burden through the latter means, he or she must show not only that the nonmovant has not placed proof in the record, but also that the movant will be unable to offer proof at trial." Id. at 60-61, 292 P.3d at 1290-91 (emphasis omitted).

"Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." French v. Hawaii Pizza Hut, Inc., 105 Hawaiʻi 462, 470, 99 P.3d 1046, 1054 (2004) (emphasis omitted).

1.   **Count I (Negligence)**

As to Count I, the Curtis Family contends there was a genuine issue of material fact as to whether Mr. Clouzet, Mrs. Clouzet, or Principal Lee "breached their admitted duty of care to Kallie." (Emphasis omitted.) The Curtis Family relies on the following: Mrs. Clouzet "was an unauthorized guest speaker, that Principal Lee was unaware that she was in [Mr. Clouzet's] classroom, that [Mr. and Mrs. Clouzet] singled out Kallie based on the color of her skin, and that [Mr. Clouzet], per his own confession, 'was not paying

7

attention' to what [Mrs. Clouzet] was saying."  (Emphasis omitted.)

We note that the Curtis Family makes no argument regarding any of the Defendants apart from Mr. and Mrs. Clouzet.[3] See Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) ("Points not argued may be deemed waived.").  We further note that the circuit court dismissed Kallie's Mother's and Father's claims against Mr. and Mrs. Clouzet.  Thus, we address Kallie's claim against Mr. and Mrs. Clouzet.

A successful negligence claim requires proving (1) duty, (2) breach, (3) causation, and (4) damages.  Doe Parents No. 1 v. State, Dep't of Educ. (Doe Parents), 100 Hawai'i 34, 68, 58 P.3d 545, 579 (2002).  Our appellate caselaw has sustained negligent failure to protect claims against businesses and hotels involving foreseeable criminal acts causing injury to a patron or an employee.  E.g., Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 742 P.2d 377 (1987); Maguire v. Hilton Hotels Corp., 79 Hawai'i 110, 899 P.2d 393 (1995); Moyle v. Y & Y Hyup Shin, Corp., 118 Hawai'i 385, 191 P.3d 1062 (2008).  Similarly,

---

[3] The Curtis Family expressly asserted all eight counts against all Defendants.  To the extent the Curtis Family challenges Final Judgment in favor of Hawaiian Mission Academy, the Conference, former President Watts, President Vandenburgh, Deputy Warren, or Superintendent Nelson on any of the Counts, we conclude that the circuit court did not err because the Curtis Family failed to adduce material evidence to support their claims, as discussed infra Section II.C.2.

our appellate courts have sustained negligent failure to protect claims against state agencies where they have failed to protect children under their care from sexual assault or physical abuse. E.g., Doe Parents, 100 Hawai'i at 86, 58 P.3d at 597; Kaho'ohanohano v. Dep't of Hum. Servs., 117 Hawai'i 262, 178 P.3d 538 (2008).

In moving for summary judgment, Defendants asserted the Curtis Family could not prove Mr. and Mrs. Clouzet breached their duty to care for Kallie. Defendants argued that Kallie's own testimony showed Mr. Clouzet did not verbally berate, assault, or harass Kallie. Defendants also argued that Mrs. Clouzet's comments were not intended to be malicious, and the topic of white privilege came from a student question.

Defendants cited persuasive authority that such statements, without more, are not actionable under a negligent failure to protect claim in an educational setting. See generally Walsh v. Tehachapi Unified Sch. Dist., 827 F. Supp. 2d 1107, 1115, 1124-25 (E.D. Cal. 2011) (dismissing for failure to state a claim for negligent failure to protect in a case arising from a student's suicide where a teacher allegedly called the student "fruity" in front of a classroom of students).

In sum, Defendants demonstrated that the Curtis Family could not sustain their burden of showing Mr. and Mrs. Clouzet breached a duty to care for Kallie. The burden then shifted to the Curtis Family to provide specific facts showing Mr. and Mrs. Clouzet breached their duty of care. The Curtis Family did not.

And we could find no controlling authority suggesting that isolated statements by a guest speaker in an educational setting, offensive though they may be, constitute a breach of duty to care for a student.

### 2. Count II (Negligent Supervision)

As to Count II, the Curtis Family argues that it was for the trier of fact to determine "whether [Mr. Clouzet] was acting 'outside' or 'within' the scope of his employment on February 9, 2022." And, "whether [Mr. Clouzet] was acting within or without the scope of his employment must be informed by the evidence that: (1) [Mrs. Clouzet] is not an employee of [Hawaiian Mission Academy] or [the Conference]; (2) [Mr. Clouzet] was not authorized to bring [Mrs. Clouzet] to speak; and (3) Principal Lee was unaware of 'what's going on on campus'."

As discussed above, the Curtis Family failed to present specific facts showing Mr. and Mrs. Clouzet breached their duty of care to Kallie. It thus follows that Mr. Clouzet,

10

as Mrs. Clouzet's supervisor, and Principal Lee, as Mr. Clouzet's supervisor, would not be liable for Mrs. Clouzet's statements.  See Pulawa v. GTE Hawaiian Tel, 112 Hawai'i 3, 18, 143 P.3d 1205, 1220 (2006).

Moreover, "negligent supervision may only be found where an employee is acting outside the scope of his or her employment."  Id. (quoting Dairy Rd. Partners v. Island Ins. Co., 92 Hawai'i 398, 427, 992 P.2d 93, 122 (2000)).  The Hawai'i Supreme Court adopted the approach of the Restatement (Second) of Agency to determine whether a servant acts within the scope of employment:

> In Henderson, we cited the Restatement (Second) of Agency § 228 (1958) for the definition of "scope of employment":
>
> (1)    Conduct of a servant is within the scope of employment if, but only if:
>
>> (a)    it is of the kind he is employed to perform;
>>
>> (b)    it occurs substantially within the authorized time and space limits; [and]
>>
>> (c)    it is actuated, at least in part, by a purpose to serve the master[.]
>>
>> . . . .
>
> (2)    Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Wong-Leong v. Hawaiian Indep. Refinery, Inc., 76 Hawai'i 433, 438, 879 P.2d 538, 543 (1994) (alterations in original).

At summary judgment, Defendants argued that the Curtis Family was estopped from arguing that Mr. and Mrs. Clouzet were acting outside the scope of their employment because the First Amended Complaint alleged that Defendants were "at all relevant times . . . acting within the course and scope of their duties as employees."[4]  Defendants are correct; the Curtis Family made no claim that Mr. Clouzet acted outside the scope of his employment.

Nonetheless, we note that nothing in the record suggested Mr. Clouzet acted outside the scope of his employment. He was a pastor at the Seventh-Day Adventist Church in Wahiawā and a Bible Studies teacher at Hawaiian Mission Academy since 2019.  He was teaching a class he was required (incidentally, also as a volunteer) to teach in the classroom he was assigned during the normal class time.  See id.

The Curtis Family presented no specific facts showing Mr. Clouzet was prohibited from engaging a guest speaker, or that Mr. Clouzet's actions were "far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."  See id.

---

[4]  The Curtis Family requested that this court strike Defendants' reproduction of the relevant portion of the First Amended Complaint from Defendants' Answering Brief.  Because the First Amended Complaint is in the record, the request is denied.

12

Based on the foregoing, the circuit court did not err in granting summary judgment in favor of Defendants on Count II.

**3.    Count III (NIED)**

As to Count III, the Curtis Family argues the circuit court erred in not finding Kallie's cutting was a sufficient physical injury to survive summary judgment.

The Hawai'i Supreme Court explained in Doe Parents that "an NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed 'utilizing ordinary negligence principles.'"  100 Hawai'i at 69, 58 P.3d at 580 (quoting Larsen v. Pacesetter Sys., Inc., 74 Haw. 1, 41, 837 P.2d 1273, 1293, reconsideration granted in part and denied in part, 74 Haw. 650, 843 P.2d 144 (1992)). Thus, the Doe Parents court explained that the ordinary elements of a negligence claim apply.  Id. at 71, 58 P.3d at 582.

Although the Curtis Family focuses on the injury element, their NIED claim fails for the same reason their negligence claim fails:  the Curtis Family failed to "demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial" on the breach element of their negligence claims.  See French, 105 Hawai'i at 470, 99 P.3d at 1054 (emphasis omitted).

Thus, even when viewing the evidence in the light most favorable to the Curtis Family, we cannot conclude the circuit court erred by granting summary judgment in favor of Defendants on Count III.

### 4.    Count IV (IIED)

As to Count IV, the Curtis Family argues the circuit court erred in determining that Mrs. Clouzet's statement that Kallie benefited from white privilege was not outrageous and that, given Kallie's young age, Mrs. Clouzet's position of power as a guest speaker, the public nature and classroom setting of her statement, as well as its racial quality, the issue should have been put to a jury.

A successful IIED claim requires proof that the conduct (1) was intentional or reckless, (2) was outrageous, and (3) caused (4) "extreme emotional distress to another." Goran Pleho, LLC v. Lacy, 144 Hawaiʻi 224, 237, 439 P.3d 176, 189 (2019).

"The term 'outrageous' has been construed to mean without just cause or excuse and beyond all bounds of decency." Id. (quoting Enoka v. AIG Hawaiʻi Ins. Co., 109 Hawaiʻi 537, 559, 128 P.3d 850, 872 (2006)).  The Hawaiʻi Supreme Court has further explained that "[t]here is 'no clear definition of the prohibited outrageous conduct,' and the correct inquiry is simply whether 'an average member of the community' would

14

exclaim, 'Outrageous!'" Id. at 238, 439 P.3d at 190 (quoting Young v. Allstate Ins. Co., 119 Hawaiʻi 403, 425, 198 P.3d 666, 688 (2008)).

Courts have held that, "although '[r]acial discrimination can amount to extreme or outrageous conduct,' Park v. Hyatt Corp., 436 F. Supp. 2d 60, 65 (D.D.C. 2006), that is typically only the case where there is a 'pattern of harassment,' as opposed to 'a few isolated incidents,' Paul v. Howard Univ., 754 A.2d 297, 308 (D.C. 2000)." Bonner v. S-Fer Int'l, Inc., 207 F. Supp. 3d 19, 25 (D.D.C. 2016); accord Silva v. Town of Uxbridge, 771 F. Supp. 3d 56, 75 (D. Mass. 2025) ("[P]assive conduct and isolated remarks do not form the basis for an IIED claim."). Additionally, "[t]he question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." Goran Pleho, 144 Hawaiʻi at 237, 439 P.3d at 189 (emphasis added) (quoting Young, 119 Hawaiʻi at 429, 198 P.3d at 692).

At summary judgment, Defendants, citing commentary to the Restatement (Second) of Torts § 46, argued there was "no evidence that any of the Defendants engaged in any outrageous acts," and "liability clearly does not extend to mere insults [or] indignities."

Stating Kallie benefited from white privilege was not outrageous. The burden then shifted to the Curtis Family to provide specific facts showing Defendants engaged in outrageous conduct. The Curtis Family did not.

Thus, even when viewing the evidence in the light most favorable to the Curtis Family, we cannot conclude the circuit court erred in exercising its gatekeeper role, consistent with our caselaw, by granting summary judgment in favor of Defendants on Count IV.

### 5. Count VI (Defamation)

As to Count VI, the Curtis Family argues the circuit court erred in granting summary judgment "because telling a class full of 'non-white looking' teenagers that the one 'white looking' girl has a privilege over the rest of them could very well create resentment against the poor girl, thereby 'harming her reputation' and 'lowering her in the estimation' of her classmates." (Emphasis omitted.)

Although the Curtis Family claimed the white privilege statement was defamatory in their First Amended Complaint, they abandoned that claim during the April 25, 2023 hearing on Defendants' summary judgment motion as to Count VI. During the hearing, counsel for the Curtis Family stated:

- "[H]ow both Court and the counsel are setting each other up for this straw man's argument as if that we are claiming that the white privilege was the defamatory comment.  We didn't."

- "I specifically said it's the comment where [Mr. Clouzet] called Kallie white is defamatory."

- "Why are we engaging in straw man arguments, oh, counsel, do you think white privilege is defamatory?  Oh, I don't think so, Judge.  We never claimed that."

- "[W]hy are we focusing on white privilege?"

- "We never said anything about white privilege. That was regarding other issues.  Here defamatory comment -- I'm going to make the record clear and then you can go ahead and decide whatever you're going to decide.  Our defamatory comments are based on the fact that [Mr. Clouzet] specifically said she's white when she wasn't . . . and, two, that he lied about their church attendance. That's it."[5]

---

[5]  The Curtis Family makes no argument on appeal that the statement that Kallie was "white" or Mr. Clouzet's statements regarding the Curtis Family's church attendance were defamatory and therefore waive any such argument.  See HRAP Rule 28(b)(7).

Based on the Curtis Family's arguments during the hearing, they waived any claim that the white privilege statement was defamatory. Thus, we decline to address their contention as to this issue on appeal.

## C.   No Abuse in Awarding Attorneys' Fees

Finally, the Curtis Family challenges the circuit court's award of attorneys' fees under Hawai'i Revised Statutes (**HRS**) §§ 607-14 (2016) (Assumpsit) and -14.5 (2016) (Frivolousness).[6]

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." Maunalua Bay Beach Ohana 28 v. State, 157 Hawai'i 150, 156, 575 P.3d 783, 789 (2025) (quoting Sierra Club v. Dep't of Transp. (Superferry II), 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009)).

### 1.   HRS § 607-14 (Assumpsit)

The Curtis Family argues that the circuit court erred in awarding attorneys' fees incurred while litigating Count V under HRS § 607-14 because the circuit court determined that the claim did not sound in contract but instead in tort. Defendants counter that the nature and character of Count V as plead

---

[6] Although the Curtis Family challenges the award of costs in their points of error, they make no argument on this issue. Thus, we deem any challenge to costs waived. See HRAP Rule 28(b)(7).

required them to defend the claim as though it was in the nature of assumpsit.

HRS § 607-14 authorizes the award of reasonable attorneys' fees against the losing party "in three types of cases: (1) all actions in the nature of assumpsit; (2) all actions on a promissory note; and (3) contracts in writing that provides [sic] for an attorney's fee." Eastman v. McGowan, 86 Hawai'i 21, 31, 946 P.2d 1317, 1327 (1997). The Hawai'i Supreme Court provided guidance for determining when a claim is "in the nature of assumpsit" under HRS § 607-14:

> In ascertaining the nature of the proceeding on appeal, this court has looked to the essential character of the underlying action in the trial court. The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought. Where there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit.

Blair v. Ing, 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001) (citation modified).

Here, the Curtis Family raised eight counts in their First Amended Complaint. Of those eight counts, Count V expressly claimed breach of contract. The Curtis Family stated they paid about $14,000.00 for Kallie's tuition, and that tuition served as a contract "for the specific educational services and religion instruction."

In defending against Count V, Defendants asserted that there was no contract, and Count V is "nothing more than a

restated negligent education claim."  In the alternative, Defendants argued that even if a contract existed, they did not breach that contract.

The circuit court granted summary judgment in Defendants' favor.  Thus, the Curtis Family lost on Count V, and they did not appeal the circuit court's decision on Count V.

Defendants sought $446,716.17 in fees, inclusive of general excise tax.  The circuit court concluded that "a fair and reasonable way to apportion Defendants' attorneys' fees is to pro rate the attorneys' fees equally among all of the eight claims."  The circuit court found that one-eighth of the fees requested was $55,839.52.[7]  See id. ("[I]n awarding attorneys' fees in a case involving both assumpsit and non-assumpsit claims, a court must base its award of fees, if practicable, on an apportionment of the fees claimed between assumpsit and non-assumpsit claims.").

In sum, as pled, Count V was in the nature of assumpsit.  That Defendants successfully defended the claim on the basis that there was no contract and the Curtis Family was merely repackaging a tort claim does not render a request for attorneys' fees under HRS § 607-14 invalid.

---

[7]  $446,716.17 ÷ 8 = $55,839.52.

Thus, the circuit court did not abuse its discretion in awarding attorneys' fees in favor of Defendants on Count V.

## 2. HRS § 607-14.5 (Frivolousness)

The Curtis Family also argues that the circuit court abused its discretion in awarding attorneys' fees under HRS § 607-14.5[8] as frivolous because the circuit court's findings of frivolousness were insufficient to support its award of attorneys' fees.

---

[8] HRS § 607-14.5, "Attorneys' fees and costs in civil actions," provides:

> (a)   In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim or defense was frivolous as provided in subsection (b).

> (b)   In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action.  In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal as provided in subsection (c).  If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.

> (c)   A party alleging that claims or defenses are frivolous may submit to the party asserting the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous.

(continued . . .)

The award of fees under HRS § 607-14.5 "is conditioned upon a finding that the claim or appeal is frivolous." Morrison-Knudsen Co. v. Makahuena Corp., 66 Haw. 663, 672 n.5, 675 P.2d 760, 767 n.5 (1983).

> A frivolous claim is a claim so manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required. A finding of frivolousness is a high bar; it is not enough that a claim be without merit, there must be a showing of bad faith.

Tagupa v. VIPDesk, 135 Hawai'i 468, 479, 353 P.3d 1010, 1021 (2015) (citation modified).

Here, the circuit court made specific written findings that the Curtis Family's claims in their First Amended Complaint against President Vandenburgh, former President Watts, Deputy Warren, and Superintendent Nelson were without support in the record:

- President Vandenburgh was not president at the time of the incident.

- Deputy Warren did not supervise Hawaiian Mission Academy teachers.

---

(. . . continued)

> If the party withdraws the frivolous claims or defenses within a reasonable length of time, the court shall not award attorneys' fees and costs based on those claims or defenses under this section.

(Emphases added.)

22

- There was no evidence presented linking former President Watts to the incident.

- There was no evidence presented linking Superintendent Nelson to the incident.

Further, the circuit court found that Defendants requested withdrawal of the allegedly frivolous claims in writing under HRS § 607-14.5(c), but the Curtis Family maintained claims against these four individuals nonetheless. Contrary to the Curtis Family's argument on appeal, these findings were sufficient to support the circuit court's determination of frivolousness.

The circuit court then found that "a fair apportionment or weighting of the total attorneys' fees that are attributable to the defense of the aforementioned 4 of the 9 individual Defendants is 10% of the total attorneys' fees that were incurred, or $44,671.62."[9] The circuit court awarded $44,671.62 in attorneys' fees for having "to defend the frivolous claims against the said 4 of the 9 defendants." The Curtis Family makes no assertion that apportioning ten percent of the requested attorneys' fees was an abuse of the court's discretion.

---

[9] $446,716.17 ÷ 10 = $44,671.62.

Thus, the circuit court did not abuse its discretion in awarding attorneys' fees in favor of Defendants under HRS § 607-14.5.

### III. CONCLUSION

Based on the foregoing, we affirm the circuit court's May 30, 2023 Final Judgment.

DATED:  Honolulu, Hawaiʻi, December 19, 2025.

On the briefs:

Robert G. Klein,
Kurt W. Klein,
David A. Robyak,
James M. Yuda,
(Klein Law Group)
for Plaintiffs-Appellants.

Mark G. Valencia,
James W. Rooney,
(Case Lombardi)
for Defendants-Appellees.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge